July, 1830.

Church at Ac-
quackanonk
v.
Ex'rs of Ack-
erman et al.

</div>

---

## SMITH v. ALLEN et al.

A general demurrer admits the truth of all the material allegations of the complainant's bill that are well pleaded.

Where a sheriff, *colore officii*, takes a bond for the performance of matters not authorized by the statute, the bond is void.

But if there be a mere verbal difference or departure from the provision of the statute, which imposes no new duty on the obligor, or no duties diverse from

July, 1830.

Smith
v.
Allen et al.

those required by the statute as justly and legally expounded, the bond will be good.

If, under the act of 1799, Rev. L. 426, which directs the courts of common pleas to mark and lay out the bounds and rules of the prisons in their several counties, and provides "that every prisoner in any civil action, giving bond to the sheriff with sufficient securities, *that he will keep within the said bounds,* shall have liberty to walk therein ; and if he walk out of said bounds the bond shall be forfeited," the sheriff take a bond with condition " that the prisoner shall keep within the bounds of the prison limited and prescribed by the judges of the court of common pleas of the county of E—, *and not walk out or depart the same until he be discharged by due course of law,*" it is within the rule, and a good bond.

Such a bond is not a bond of *indemnity,* strictly speaking. It does not lie in the mouth of the obligors to say the sheriff is not damnified. There is no necessity of showing an actual damnification. The bond is actually forfeited by the defendant going off the limits, and the cause of action is made out by proving the bond and the escape.

Equity will not interpose to effect the forfeiture of a privilege, the divesting of an estate, the taking away of a right by condition, subsequent or otherwise, or the discovery of some matter which may render an act done illegal and thereby subject the party to a penalty. But this rule does not apply to the case of reforming a mistake in a bond for the prison limits.

When the proof of a mistake in a bond is full and satisfactory, equity will relieve, even against securities ; and that as well where the complainant seeks relief affirmatively, on the ground of the mistake, as where the defendant sets it up to rebut an equity : such a case is not within the statute of frauds.

THE bill states that the complainant was sheriff of Essex county. That about the 25th day of May, 1826, there-was placed in his hands a writ of *capias ad satisfaciendum,* issued out of the inferior court of common pleas of said county, against D. K. Allen, at the suit of the president, directors and company of the Paterson bank, for $979 57, besides interest ; and that on the same day he arrested the defendant, by virtue of the said writ. That the said D. K. Allen, insisting on the benefit of the prison limits, and offering sufficient sureties, the complainant agreed to accept the same, and permit him to walk within the said limits. That the complainant prepared a bond, which was on the same day executed by the defendants in this case, Allen, Cobb, and Carrick; and thereupon he permitted the said defendant, Allen, to walk within the limits of the prison. That on the same day the said Allen did knowingly and intentionally walk out of the limits, and still remains out of the same, against the condition of the bond. That the complainant, in the hurry of business, and by mere accident

and mistake, in drawing the said bond, described the writ in the reciting part of the condition of the bond, as *an original execution*, and returnable the fourth Tuesday of *April ;* whereas the said writ should have been described as a *ca. sa. post fi. fa.* and returnable the fourth Tuesday in *June.* That the writ was described as issuing for the sum of $979 57, *with interest from* 20*th September*, 1825 ; whereas on the face of the writ it purported to be for the sum of $979 57, *residue of damages and costs*, but was *endorsed* to have been issued for that sum with interest as aforesaid, which led to the error, if any it is, and that this was through mistake and inadvertence. That the plaintiff in the execution, threatened to proceed against the complainant as for an escape, and refused to accept an assignment of the bond, but agreed to bring a suit thereon in the name of the complainant. An action was accordingly commenced; and a declaration having been filed, the defendants have pleaded (*inter alia*) that the said bond was not given to the complainant under and by virtue of the arrest of the said D. K. Allen, upon the said writ of ca. sa. in the said declaration mentioned : under which plea it is supposed they intend to avail themselves of the said mistakes. That after this plea pleaded, the bank refused to proceed farther, but left the suit to be carried on by the complainant at his own expense, and have now prosecuted the complainant for an escape. The bill prays that the recital in the condition of the said bond may be reformed and corrected, and made according to the fact and truth of the case ; and that the defendants may be restrained from setting up or insisting on, by way of defence, the aforesaid variance or discrepancy between the writ and the recitals in the condition of the bond ; and that the defendants may be restrained from non-prossing the complainants for not replying to said plea until they shall have answered, &c.

To this the defendants have filed a general demurrer.

*E. Vanarsdale*, for the defendants. The demurrer ought to prevail, because the complainant has not made such a case as would enable him to support his action at law, if the mistake in the bond was rectified according to the prayer of the bill : 3 *Bro. C. C.* 155 ; *Beams. Pl. Eq.* 276. The condition of the bond taken by the sheriff is larger and more comprehensive than the statute requries or authorizes. The condition prescribed in the

act, Rev. L. 426, is, "that the defendant will keep within the bounds of the prison;" to which, in this bond is added, "and not walk out or depart the same until discharged by due course of law." This imposes a duty not authorized by the statute, which might operate oppressively. If the prisoner should compromise with the plaintiff, and walk off the limits, without obtaining a regular discharge from prison, the bond would be forfeited. The bond is therefore void: 1 *Pen. R.* 118; 2 *Pen. R.* 500; 19 *John. R.* 233. But if the bond was good, the complainant is not entitled to the relief prayed. This suit is to aid the action at law. In that action the sheriff must show that he is damnified by the prisoner having gone off the limits; which he could not do at the time the action was commenced by him. No action had then been commenced against him, and it might be that he would never be called on. Before he can maintain an action on the bond, he must have paid the money: 10 *John.* 584. The complainant seeks to have this bond rectified to enable him to enforce a penalty; but equity does not assist in the recovery of a forfeiture: 4 *John. C. R.* 431; 1 *Peters R.* 236; 19 *Ves. jr.* 225. But the main question is, can the complainant come into this court and falsify his bond to have it carried into effect. He alleges no fraud; the bond was drawn by himself. He sets forth no previous agreement that the defendant should give him a different bond; he has nothing by which to rectify the bond. Equity will interfere to prevent a party enforcing an agreement entered into by mistake, but not where he seeks to have an agreement corrected to enable him to enforce it: 3 *Bro. C. C.* 390, *in notes;* 1 *Ves. and Beam. R.* 396. This rule is founded on the general law of evidence, and on the statute of frauds: *Rev. L.* 152. This bond is within the 14th section, which relates to contracts to answer for the debt, default or miscarriage of another. Hence the mistake, if any exist, cannot be amended: 7 *Ves. jr.* 211; 14 *Ves.* 524; 15 *Ves.* 516; 2 *Mad. C.* 120; 1 *Scho. and Lef.* 22; 1 *Bro. C. C.* 92.

*J. C. Hornblower,* for the complainant. I admit the position that relief here would be unavailing, if after rectifying the bond we have no remedy at law. But the statute under which the bond was taken, *Rev. L.* 426, does not prescribe the form of the condition; it only gives the substance, and states what shall be a for-

feiture. The condition of the bond taken by the sheriff is not more comprehensive than that authorized by the act. It is substantially the same. Both branches of the condition mean the same thing: either would be sufficient, and in compliance with the act. The latter part is merely a repetition, in other words, of what is comprised in the former. It imposes no additional obligation, and may be regarded as surplussage. In the cases cited on the other side, the enlargement of the condition of the bonds beyond what the law authorized, was manifest. The additions were material. The difficulty suggested by the counsel cannot occur under a bond like the present. If the prisoner satisfy the execution on which he is confined, the law authorises him to go off the limits, without an order of the court : this is a discharge in due course of law. A bond to keep within the prison bounds is not a *bond of indemnity,* in the legal acceptation of the term. The plea of *non-damnificatus* cannot be pleaded to an action brought upon such a bond. It is not necessary the sheriff should have paid the money, to enable him to maintain an action. The cause of action is made out by proving the bond, and the escape : 5 *John. R.* 42 : 1 *Saund. R.* 171, *N.* 1 ; *Cro. El.* 914; 1 *Leon.* 71 ; 3 *Mod.* 252; *Carth.* 375 ; 5 *Mod.* 243 ; 1 *Bos. and P.* 638; *ib.* 40, *N. b. ; Cowp.* 47 ; 2 *T. R.* 100; *ib.* 640 ; 7 *T. R.* 97 ; 14 *John.* 177 ; 1 *John. R.* 271. The case in 10 *John. R.* 584, is not applicable : the plea of non-damnificatus was not pleaded in that case, (*See* 9 *John. R.* 234.) Under our statute, *Rev. L.* 651 : If the prisoner go beyond the limits, it is " an absolute forfeiture of the bond ; and the sheriff, or plaintiff in case the bond has been assigned to him, may maintain an action on the bond, notwithstanding the prisoner may have returned within the prison limits before the commencement of the suit." And the plaintiff must have judgment for the penalty, and execution for the amount due : 15 *John. R.* 474. The objection that equity will not assist by reforming the bond, in order to enforce a penalty, applies to a class of cases very different from the present. We are seeking, by means of this bond, the recovery of a debt. It is not necessary for us to charge fraud : *mistake* is equally a ground for equitable relief : 1 *Ves. and Beam.* 165. As to a previous agreement by which to correct the bond, it is implied in the very nature of the transaction. It was to give such a bond as we desire this to be

made; such a bond as the law required upon the arrest of the defendant, by virtue of the writ on which he was taken and in custody. The writ we have set out in the bill. As to the statute of *frauds,* our case is not within it. We are seeking the liability of thé man who owes the debt, and have the agreement in writing required by the statute. If there is any mistake in this, the court have power to correct it, even against sureties. No question can now be made as to the competency or sufficiency of the evidence to prove the mistake. We are here upon a state of facts set forth in the bill, and a demurrer, which admits the truth of every thing well pleaded. *Prec. in Ch.* 309 ; 2 *Atk.* 31 ; 3 *Ves. jr.* 580 ; 2 *Ch. Ca.* 225 ; 2 *Freem. R.* 16 ; 4 *T. R.* 213 ; 2 *John. Ca.* 42 ; *Finch.* 413 ; 9 *John. R.* 285 ; *Day's C. Er.* 139 ; 2 *Atk.* 203 ; 1 *Ves.* 317 ; 1 *John. C. R.* 274.

*Vanarsdale,* in reply. The New-York case, 10 *John.* applies to the present. The only difference between the statutes of New-York and New-Jersey as to giving bond, is, that our last act prevents the party from pleading a voluntary return before suit brought. The true distinction as to enforcing forfeitures, is to be found in 1 *Ball & Bea.* 273. This is not a case in which the court will correct the bond : no agreement is set forth in the bill. The cases where mistakes have been corrected on joint and several bonds, are upon the principle that the parties were all originally liable : here there was no pre-existing liability to pay ; it is the bond that creates the liability : 1 *Pet. N. J. R.* 14 ; 2 *Merriv.* 36. The statute of frauds will not permit an amendment in such a case. The sureties are within the statute, and may have the benefit of the demurrer, if the principal cannot, although the demurrer is joint : 8 *Ves. jr.* 403.

THE CHANCELLOR. It is contended, in the first place, that the complainant has not by his bill made such a case as will support his action at law, even if the mistakes in the bond are rectified. And it is very properly admitted, that if this be so the bill cannot be sustained, and the demurrer is well taken. The ground of objection is, that the condition of the bond which is sought to be reformed, is larger than the statute requires or authorizes, and therefore the bond itself is void. The condition of the bond is,

"that if the above named D. K. Allen, shall and do keep within the bounds of the prison, limited and prescribed by the judges of the inferior court of common pleas in and for the county of Essex, and not walk out or depart the same until he be discharged by due course of law, then this obligation to be void," &c. The only condition prescribed by the statute is, that the prisoner *shall keep within the bounds prescribed* by the court of common pleas, &c. The objection cannot prevail. It is true, that when a sheriff, *colore officii,* takes a bond for the performance of matters not authorized by statute, such bond is void. The power of the officer in that behalf is a strict power, and shall not be extended. But while this principle is fully recognized, care must be taken in its application, that the ends of justice be not defeated by technical or verbal criticism. In the case of *Sullivan* v. *Alexander,* 19 *John. R.* 234, cited by the defendants' counsel, the rule is laid down broadly, that when there is a substantial variance,—as if the sheriff adds to the condition, that he shall be kept without damage against the king and the plaintiffs,—that will make the whole condition void. But it is also added, that a mere verbal difference or departure from the provision of the statute, will not render the bond void.

If the condition of the bond imposes no new duties on the obligors, or no duties diverse from those required by the statute as justly and legally expounded, then it will be good. And I am clearly of opinion that this condition is within that rule. The condition in the statute is very brief. It is simply, *that the prisoner shall keep within the bounds of the prison.* The condition of the bond is, that he shall keep within the bounds of the prison limits, *and not walk out or depart the same.* This latter part imposes no new duty. It is simply a repetition of the former part, but clothed in a new dress. It is mere surplussage, and cannot vitiate. But the condition of the bond goes farther, and says, the prisoner shall not depart the limits *until he be discharged by due course of law.* And it was contended that this might operate hardly upon the prisoner : that if the debt was paid, and he departed the limits without some judicial order, the bond would be forfeited. If this were even true, would it not apply with equal force to a bond, the condition of which was simply, that the prisoner should keep within the limits? This, taken literally,

**7**

would mean, that not only the payment of the debt, but even the order of the court, would be insufficient to warrant the prisoner in walking off the limits; and that if he did so depart, the bond would be forfeited. It is absolute, and admits of no exception. But this is not the true construction. When the money is paid, the defendant can no longer be retained in custody; the object of the execution is satisfied. The command of the writ is, that the sheriff take the body of the defendant, and keep him, so that he satisfy the plaintiff the debt or damages, as the case may be. Upon the payment of the money he is to be discharged. He has a legal right to demand it; and if the sheriff discharges him, he does it lawfully; or as the bond says, he is discharged by due course of law. I am satisfied that this bond is substantially correct. If not precisely according to the form of the statute, yet " it is to be known," as Lord Coke says, " that there are two manner of forms, " *sc. forma verbalis* and *forma legalis;* forma verbalis stands " upon the letters and syllables of the act: forma legalis is forma " essentialis, and stands upon the substance of the thing to be " done, and upon the sense of the statute: quia notitia ramorum " hujus statuti non in sermonum foliis, sed in rationis radice, posita " est." *Beaufage's case,* 10, *Co.* 100.

But it is alleged that if the bond is a good bond in these particulars, the complainant does not show such a case as entitles him to relief. He does not show that he is damnified. He has not paid the money, and the plaintiff in the execution may never call on him. That when the bill was filed, the suit for an escape was not instituted; and we must regard the rights of the parties as they were when the bill was filed.

It is expressly stated in the bill, that an action for the escape had been brought against the complainant, by the Paterson bank, and was then pending. This allegation must be taken as true, and is so considered by the court under the demurrer filed. It is not, however, deemed important. This bond is not a bond of indemnity, strictly speaking. There is no necessity of showing an actual damnification. The bond is forfeited by the defendant's going off the prison limits. It is an escape, and the sheriff is liable. It does not lie in the mouth of the defendant to say, you are not damnified; you have not yet been obliged to pay the money; and while you thus remain uninjured, you have no

July, 1830.

Smith
v.
Allen et al.

rights against me. It is unjust that the sheriff should be exposed to an absolute liability, have the means in his own hands of protecting himself against it, and yet be unable to move, until the plaintiff in the execution shall first move against him. The cause of action is made out by proving the bond and the escape: *Kip v. Brigham*, 7 *John. R.* 271. And this is manifestly so under our statute. The sheriff is authorized to assign the bond. If there was no right of action in the sheriff, he could convey none to the plaintiff, and the assignment would be unavailing. As well, therefore, on the ground that this bond is not a bond of indemnity, as that the forfeiture under the statute is an absolute forfeiture, and that a right of action follows as a necessary consequence, this second objection is deemed insufficient.

The third objection raised to the complainant's bill, is, that it seeks to get the bond rectified in order to enforce a penalty; and it is said that equity does not assist in the recovery of a forfeiture. That is unquestionably the doctrine of this court. But the attempt to apply it to a case like the present, is not sustained even by the decisions adduced by the defendants' counsel. The case of *Livingston v. Tompkins*, 4 *John. C. R.* 415, was an injunction case; and the injunction was moved for on the ground, that the grant from the plaintiff to the defendant had ceased and become void, in consequence of the matters charged in the bill. In that case, Chancellor Kent referred to a distinct and well known class of cases, showing that a man is not bound to answer so as to subject himself, either directly or eventually, to a forfeiture or penalty: and that a court of equity will not aid in working a forfeiture, or divesting an estate. The cases of *Hosburg v. Baker*, 1 *Peters' U. S. R.* 232, and *Paxton v. Douglass*, 19 *Ves.* 224, also referred to, are of the same character. They have reference to the forfeiture of some privilege, the divesting of some estate, the taking away of some right by condition subsequent or otherwise; or to the discovery of some matter which may render an act done illegal, and thereby subject the party to a penalty. To effect these objects, equity will not interpose. But neither the rule nor the reason of the rule, has any application to this case.

The real question arises upon the fourth objection; which is, that although a court of equity will relieve, in cases of mistake, to *prevent a party from enforcing* an agreement entered into by

mistake; yet it will not *aid a party* who seeks to have an agreement corrected, for the purpose of enforcing it. And the reason assigned is, that it would be contrary to the provisions of the statute for the prevention of frauds and perjuries, and also contrary to the general law of evidence. This objection, if sound, is radical, and therefore requires a careful consideration. The question comes up on a general demurrer, which admits all the material allegations of the complainant's bill that are well pleaded.

The bill states, that Allen was duly arrested, by virtue of the writ, and was in custody: that he requested permission to walk within the prison limits; and, offering sufficient sureties, the complainant agreed to accept them, and thereupon prepared a bond, which was executed by the defendants: and that then the complainant permitted the said Allen to have the benefit of the prison limits. The bill further states, that the alleged variation between the bond and the writ was owing to the "hurry of business, and by mere accident and mistake." There is no explicit agreement set forth in the bill, as having been made between the complainant and all the defendants, or even between the complainant and Allen himself, in relation to the kind of bond that was to be given; and it was contended that the bill was defective in that particular. I think it is not. This is a case where the agreement, if entered into at all, must have been regulated by law. It admitted of neither extension nor abridgement. If, then, the defendant, Allen, on being arrested, requested to have the benefit of the limits, and offered sufficient sureties to enable him to procure it, and the sheriff agreed he should have it on giving bond with security, and the bond was accordingly prepared and given; it is manifest that the one party agreed to give, and the other to accept, such a bond as would enable the sheriff legally to release the defendant from arrest in that particular case, so far as to give him the benefit of the limits. The agreement and the mistake are sufficiently charged. How or by what proof they may be sustained, is not now to be considered.

The inquiry, then, presents itself, can such a mistake be permitted to be shown by the complainant, to correct the bond on which he seeks to recover: or can it only be shown by the defendant, when set up to rebut an equity? This is not alleged to be a case of fraud, but of mere mistake; and it

was forcibly argued, that even if cases of fraud might properly be considered as exceptions, and out of the statute, mistakes were to be placed altogether on a different footing. That a defendant may set up and avail himself of a plain mistake in a written agreement, and thereby relieve himself from the operation of the agreement, is a principle too well settled in courts of equity to be shaken at this day. It would be a waste of time to enumerate the authorities. That the plaintiff is entitled to the same assistance to enable him to recover, has not been uniformly admitted at Westminster Hall, but there is a train of cases in favour of the proposition, which certainly go very far towards settling it. In *Uridale* v. *Halfpenny*, 2 *P. Wms.* 151, (1723,) a bill was filed to rectify a mistake in a settlement, in placing the term after the limitation in tail to the sons, whereas the term should have been before such limitation. Sir Joseph Jekyll sustained the bill, and helped the mistake. This case was afterwards recognized and approved of by Ld. Hardwick, in *Heneage* v. *Hunloke*, 2 *Atk.* 456. In *Simpson* v. *Vaughan*, 2 *Atk.* 31, (1739,) Ld. Hardwick corrected a bond, which, *by mistake*, was made a joint bond instead of a joint and several bond : and this was done on the application of the complainant. The case of *Hinkle* v. *The Royal Exchange Assurance Company*, 1 *Ves. sen.* 317, was decided by the same chancellor in 1749, and is a leading case on the subject. The bill was filed to have a policy of insurance rectified. The warranty was from London, when it was insisted it should have been from *Ostend* only. Ld. Hardwick says, " no doubt but this court has jurisdiction to relieve, in respect of a plain mistake in contracts in writing, as well as against frauds in contracts, so that if reduced into writing contrary to the intent of the parties, on proper proof that would be rectified." Evidence was admitted to show the mistake, but not being conclusive, the bill was dismissed, without costs. In *Baker* v. *Paine*, 1 *Ves. sen.* 456, (1750,) articles of agreement were allowed to be rectified on application of the complainant, by the minutes and calculations made at the time. Again, in *Burn* v. *Burn*, 3 *Ves. jr.* 573, (1797,) a joint bond was held by Lord Rosslyn to be a several bond, even against creditors, and the mistake was shown on the part of the complainant. So also in the *South Sea Co.* v. *D'Oliffe*, cited 6 *Ves. jr.* 601, the party was

relieved against a mistake in a bond, given by way of security; six months having been inserted instead of two months. The same doctrine is maintained by Ld. Thurlow, in *Taylor* v. *Radd*, cited in 3 *Bro. C. R.* 454, and by Ld. Eldon, in *Barstow* v. *Kilvington*, 5 *Ves. jr.* 593. In this last case a settlement was reformed in favour of the younger children, against the heir of the mother. The chancellor remarks, that the settlement was certainly such as never could have been the deliberate intention of the parties making it ; and the evidence being full, the mistake was rectified. It would be needless to multiply authorities. They may be found collected in 2 *Bridgm. Index*, 320, tit. *Mistake ; Sugden on Vendors*, 120 ; *Jeremy on Eq. Ju.* 432, 456, 489.

There are cases which seem to lead to a different conclusion : such as *Woolam* v. *Hearn*, 7 *Ves. jr.* 211; *Higginson* v. *Clowes*, 15 *Ves. jr.* 516 ; and *Clinan* v. *Cook*, 1 *Scho. & Lef.* 39. But these are all cases where bills were filed for a specific performance, and in which the complainant undertook to aver against his own instrument. They appear to be governed by a different rule, the correctness of which has been questioned by high authority. See 4 *John. C. R.* 148, *Kisselback* v. *Livingston.* But in relation to reforming deeds, bonds, mortgages, &c. the weight of authority is evidently in favour of the power of this court, whether sought on the part of the complainant or the defendant ; and that, whether the matter to be corrected has originated in fraud or mistake. The statute of frauds does no more protect the defendant against mistake than the plaintiff : both stand on the same foot. In this country the principle has been recognized very distinctly by chancellor Kent, in *Wiser* v. *Blachly*, 1 *John. C. R.* 607, where a guardianship bond was corrected and enforced, even against sureties, and upon the broad principle, that where a mistake was manifest, the court, in the exercise of its ordinary jurisdiction, would correct it, and hold the party according to his original intention. So in *Gillespie* v. *Moore*, 2 *John. C. R.* 585, the court, after collecting and revising most of the cases on the subject, decided that equity would relieve against a mistake, and that as well when the complainant seeks relief affirmatively, on the ground of mistake, as where the defendant sets it up as a defence, or to rebut an equity. This case came under review in the court of errors, on the argument of the appeal of *Lyman* v.

*The Utica Insurance Co.;* and the broad principle was sustained by a large majority of the court. Chief Justice Spencer, in remarking on it, says, that " it will remain a land-mark for future decisions: the reasoning is strong, irresistible, and conclusive :" 17 *John. R.* 377. I am satisfied to adopt this as the correct principle. It is supported by the current of authorities and the reason of the thing. It should be carefully guarded, I admit. The evidence to support the mistake should be full and satisfactory; such as to leave no room for reasonable doubt, especially if denied by the defendant's answer. But when such evidence is adduced, and the use intended to be made of the mistake is unconscionable and oppressive, it would seem to be the privilege and the duty of this court to interfere, so as to prevent gross and flagrant injustice. Under this view of the case I shall order the demurrer to be overruled, with costs.